UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHANNON M. SHEARER,                   )<br>　　*Ms. Shearer*,                               )<br>　　　　　　　　　　　　　　　　　　　)<br>　　*vs*.                                             )          1:12-cv-00066-JMS-DKL<br>　　　　　　　　　　　　　　　　　　　)<br>MICHAEL J. ASTRUE, Commissioner of Social  )<br>Security,                                        )<br>　　*Defendant*.                                )  | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Sharon Shearer applied for disability insurance benefits ("DIB") through the Social Security Administration ("SSA") in December 2010. [R. 21; dkt. 13-2 at 22.] After a series of administrative proceedings and appeals, including a hearing in July 2011 before Administrative Law Judge ("ALJ") Ronald T. Jordan, the Commissioner finally denied her application. [R. 18-20; dkt. 13-2 at 19-21.] The Appeals Council denied Ms. Shearer's timely request for review of the ALJ's decision, rendering that decision the final one for the purposes of judicial review. 20 C.F.R. § 404.981. Ms. Shearer then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the ALJ's denial.

### BACKGROUND

**A. Pertinent Medical Evidence**

In February 2008, Ms. Shearer underwent spinal fusion surgery in February 2008 due to degenerative disc disease. [R. 480, 502; dkt. 13-9 at 81; 103.] In June 2009, treating pain specialist Dr. Kowlowitz implanted a spinal cord stimulator to treat Ms. Shearer's post-laminectomy syndrome and lumbosacral radiculitis. [R. 498; dkt. 13-9 at 81.] A subsequent MRI revealed mild bulging discs and no further surgery was recommended. [R. 502; dkt. 13-9 at 85.] Ms. Shearer received treatment from Dr. Karen Schloemer, a treating pain management

1

specialist, and experienced fifty-percent relief of her pain. [R. 468; dkt. 13-9 at 51.] Ms. Shearer told Dr. Schloemer in September 2009 that her pain interfered with various activities, but she was still working two jobs and taking care of her grandmother. [R. 460; dkt. 13-9 at 43.] While Ms. Shearer experienced pain relief from exercise and medication, [*id*], when Ms. Shearer ran out of medication several months later, she noted worsening pain. [R. 613; dkt. 13-10 at 86.]

In January 2011, Ms. Shearer was evaluated by Dr. Nina Dereska. [R. 502-11; dkt. 13-9 at 85-94.] Ms. Shearer complained of COPD symptoms and back problems starting several years earlier. [R. 502; dkt. 13-9 at 85.] She told Dr. Dereska that she slept at night with the use of two liters of oxygen and occasionally used oxygen during the day when winded. [*Id*.] Dr. Dereska noted that Ms. Shearer's diabetes condition was well managed with medication, and that she had no retinopathy, neuropathy, numbness, or tingling. [*Id*.] Dr. Dereska also noted that Ms. Shearer ambulated without a cane, was able to get on and off the table without difficulty, and could bend over to attend to footwear. [R. 503; dkt. 13-9 at 86.] Examination of Ms. Shearer's cervical spine revealed decreased forward flexion and lateral bending, poor balance, and no cervical spine tenderness or spasm. [R. 504-05; dkt. 13-9 at 87-88.] Dr. Dereska opined that while Ms. Shearer's ability to sit, stand, and walk were impacted by chronic back pain, she could still sit thirty minutes at one time, stand thirty minutes at a time, walk 250 feet, climb two flights of stair, and lift twenty pounds. [R. 505; dkt. 13-9 at 88.] She also recommended postural activity limitations. [*Id*.]

State reviewing doctor Dr. Sands completed a physical capacity assessment in January 2011. [R. 521-28; dkt. 13-9 at 104-11.] Dr. Sands opined that Ms. Shearer could lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for six or eight hours a day; never balance; occasionally perform other postural activities; and should avoid

2

concentrated exposure to hazards, fumes, and dusts. [R. 522-25; dkt. 13-9 at 105-08.] State agency reviewing doctor Dr. M. Ruiz affirmed Dr. Sands' assessment on reconsideration in March 2011. [R. 618; dkt. 13-10 at 91.]

As of January 2011, Ms. Shearer smoked two packs of cigarettes a day, [R. 502; dkt. 13-9 at 85], as she had been doing since the age of thirteen, [R. 566; dkt. 13-10 at 39]. Ms. Shearer had been instructed on previous occasions to quit smoking. [R. 546, 640, 652; dkts. 13-10 at 19, 13-11 at 23, 35.] Her doctor noted that her pulmonary functions were intact from May 2010 through February 2011, and if she quit smoking, her chronic bronchitis symptoms "would go away." [R. 547; dkt. 13-10 at 20.] Smoking was listed as an "[e]xacerbating factor" to her breathing problems. [R. 636; dkt. 13-11 at 19.]

In March 2011, Ms. Shearer acknowledged to an examining physician that she did not use oxygen at home. [R. 645; dkt. 13-11 at 28.] Upon examination, Ms. Shearer's heart rate was normal, her breathing was not labored, and her cough was mild. [R. 649; dkt. 13-11 at 32.] In June 2011, Ms. Shearer experienced exacerbated COPD symptoms, but she maintained an oxygen saturation rate of ninety-five percent. [R. 619-20; dkt. 13-11 at 2-3.] A chest x-ray and a CT chest scan yielded mostly normal results. [R. 622, 632; dkt. 13-11 at 5, 15.] Ms. Shearer improved with nebulizer treatment, experiencing no wheezing thereafter. [R. 623; dkt. 13-11 at 6.] Later that same month, Ms. Shearer was hospitalized for COPD exacerbation symptoms. [R. 699; dkt. 13-13 at 2.] The attending physician noted that Ms. Shearer "continues to smoke heavily." Id. Ms. Shearer was discharged in good condition and was "off of oxygen." [R. 700; dkt. 13-13 at 3.]

Dr. Schloemer completed a physical capacity assessment on July 11, 2011. [R. 697; dkt. 13-12 at 41.] She opined that Ms. Shearer could sit for thirty minutes at a time, could sit for four

hours per workday; could lift ten pounds occasionally, could not lift any amount frequently, could not raise her right arm over the shoulder level, could not stoop, had moderate to severe pain, and would miss about four days of work per month. [*Id.*]

### B. Hearing Testimony and Statements

On July 12, 2011, Ms. Shearer appeared in person and by counsel before the ALJ. [R. 37-56; dkt. 13-2 at 38-57.] She testified that she worked after her back fusion surgery, was currently collecting unemployment benefits, and was looking for work. [*Id.*] She confirmed her significant history of smoking cigarettes, but claimed that she was currently only smoking "a little," using vapor cigarettes that dispense nicotine. [R. 48; dkt. 13-2 at 49.] Ms. Shearer recently took a hiking trip with her children and had to frequently stop to rest during their walks. [R. 52; dkt. 13-2 at 53.] She did housework, cooking, and shopping with some assistance from her two children and husband. [R. 50-51; dkt. 13-2 at 51-52.] Ms. Shearer reported to a consultative examiner in January 2011 that her daily activities also included getting her children ready, picking up around the house, vacuuming, doing laundry, and cleaning dishes. [R. 515; dkt. 13-9 at 98.]

A vocational expert also testified at the hearing. [R. 52-55; dkt. 13-2 at 53-56.] The ALJ asked the vocational expert whether there were jobs that someone with Ms. Shearer's vocational profile could perform if limited to a restricted range of sedentary work. [R. 53-54; dkt. 13-2 at 54-55.] The vocational expert testified that such a person could perform various jobs and gave several examples, all of which were available in significant numbers statewide. [R. 54; dkt. 13-2 at 55.]

## DISCUSSION

This Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's (and ultimately the

Commissioner's) findings. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can [she] perform her past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

Here, Ms. Shearer claims the ALJ committed various errors between Steps 3 and 4. [Dkt. 17 at 1.] Specifically, Ms. Shearer raises the following two issues: (1) whether the ALJ properly evaluated the opinion of examining physician Dr. Dereska; and (2) whether the ALJ properly

5

evaluated the opinion of Ms. Shearer's pain management specialist, Dr. Schloemer. [*Id.*] The Court will consider each claim in turn.

### 1. The ALJ's Consideration of Consultative Examiner Dr. Dereska's Opinion

Ms. Shearer first argues that the ALJ improperly evaluated the opinion of examining physician Dr. Dereska. [Dkt. 17 at 1; 7.] Specifically, Ms. Shearer contends that because the ALJ gave "great weight" to Dr. Dereska's opinion yet his RFC differed from Dr. Dereska's findings, the RFC finding is not supported by substantial evidence. [*Id.*] The Court disagrees.

As stated earlier, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett*, 381 F.3d at 668 (internal citation omitted). Here, Ms. Shearer contends that had the ALJ given great weight to Dr. Dereska's opinions, the RFC finding would match Dr. Dereska's conclusions. However, as the Commissioner correctly points out, "[t]he ALJ never stated that he was adopting every component of Dr. Dereska's opinion, nor was he required to do so." [Dkt. 20 at 8.]

A review of the ALJ's explanation of his decision shows that the ALJ considered the record as a whole, and that his decision is supported by substantial evidence in the record. To explain his reasoning, the ALJ cites to the claimant's activities of daily living, the consultative examination, and documentation that Ms. Shearer's medications are effective in controlling her conditions, [R. 30; dkt. 13-2 at 31], evidence which he discussed throughout his opinion. [R. 21-31, dkt. 13-2 25-32.] Because the ALJ discussed the weight he afforded Dr. Dereska's findings in light of the record as a whole, [R. 30; dkt. 13-2 at 31], he has provided this Court with an adequate basis for review of his reasoning. *See Dixon*, 270 F.3d at 1176 ("[An ALJ] is not required to address every piece of evidence or testimony, but must provide some glimpse into [his] reasoning." (citation omitted)).

The ALJ has provided an explanation for his decision supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Barnett*, 381 F.3d at 668, and the Court therefore finds that there is substantial evidence in the record to support the ALJ's finding and preclude remand, 42 U.S.C. § 405(g), and to the extent that Ms. Shearer attempts to highlight evidence from Dr. Dereska that would support an alternate decision, her argument is unavailing. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992) ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence."). *See also Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. (2004) ([T]he ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." (internal citation omitted)).

The ALJ's decision is not subject to remand merely because he did not address each piece of evidence individually. *Id*. The Court's review is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's findings, *Barnett*, 381 F.3d at 668, which it does here. *See Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) ("The ALJ need only build a bridge from the evidence to his conclusion." (citations and internal quotation omitted)); *Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir. 1987) ("[C]ourts will rarely be able to say that the administrative law judge's finding was not supported by substantial evidence."). Accordingly, the Court finds meritless Ms. Shearer's challenge on that ground.

**2. The ALJ's Consideration of Dr. Schloemer**

Ms. Shearer also argues that the ALJ erred in evaluating Dr. Schloemer's opinion about the extent of her limitations. [Dkt. 17 at 19.] Specifically, she contends that the ALJ erred by

not fully adopting Dr. Schloemer's opinion regarding Ms. Shearer's exertional, postural, and environmental limitations. [*Id.*]

An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Also, treating physician opinions are generally weighted more heavily than consulting physician opinions. 20 CFR § 416.927(d)(2). Opinions that are inconsistent with the "record as a whole" are generally weighted less heavily than opinions that are consistent. *Id.* at (d)(4). Additionally, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." *Id.* at (e) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner…"). Nevertheless, the Court notes that the ALJ is required to consult the advice of a medical expert before making his Step Three determination, *Barnett*, 381 F.3d at 670, but sometimes experts disagree, and the ALJ must make "a reasonable choice among conflicting medical opinions." *Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 829 (7th Cir. 2009) (quotations omitted).

Although Ms. Shearer contends that the ALJ erred by not giving controlling weight to certain portions of Dr. Schloemer's opinion, [dkt. 17 at 19], as the Commissioner correctly points out, the ALJ is not required to give controlling weight to an opinion that is unsupported by evidence in the record. *See Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010) ("[T]he opinion of a treating physician is entitled to controlling weight only if supported by objective medical evidence." (citing 20 C.F.R. § 404.1527(d)(2)). Here, the ALJ explained his decision not to give controlling weight to Dr. Schloemer's assessment of Ms. Shearer's limitations, noting that Dr.

Schloemer's opinions were "not supported by any clinical finding or other medical opinions" and "not supported by medical evidence in the record," [R. 30; dkt. 13-2 at 31], and reasonably considering the fact that Dr. Schloemer was a pain management specialist and not an orthopedist but nevertheless opined as to Ms. Shearer's ability to walk, stand, sit, and perform other physical activities, [*id*].  *See White v. Barnhart*, 415 F.3d 654, 660 (7th Cir. 2005) (ALJ reasonably discounted doctor's opinion "when he strayed from his area of expertise.").

While she enumerates other considerations she feels the ALJ should have made, including how evidence from Dr. Dereska may support Dr. Schloemer's conclusions, [dkt. 17 at 16-17], the substance of the argument amounts to little more than an attempt to highlight evidence to support a finding other than that which the ALJ reached and which the ALJ need not have specifically addressed in reaching his finding.  *See Dixon*, 270 F.3d at 1176 ("[An ALJ] is not required to address every piece of evidence or testimony, but must provide some glimpse into her reasoning." (citation omitted)).  That Ms. Shearer is able to point to evidence that would support a finding other than that reached by the ALJ does not mean that the ALJ's decision is not supported by substantial evidence.  *See Arkansas*, 503 U.S. at 113 ("The court should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence."); *Scheck*, 357 F.3d at 699 ([T]he ALJ's decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence." (internal citation omitted)).  Because the ALJ therefore reasonably considered Dr. Schloemer's opinion in reaching his RFC finding, and as stated earlier, his decision is supported by substantial evidence in the record, the Court finds that Ms. Shearer's challenge on that ground does not merit remand.

## CONCLUSION

Although Ms. Shearer has raised two challenges to the ALJ's decision, the Court finds that neither challenge has merit given the limited standard of review that the Court must apply here. Therefore, the Court **AFFIRMS** the Commissioner's denial of benefits. Final judgment will be entered accordingly.

12/07/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

J. Frank Hanley, II
lauras@jfrankhanley.com